UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 0:14-CV-62477-RNS

FEDNIE MATHIEU ANDUZE,

        Plaintiff,

vs.

BAYVIEW LOAN SERVICING, LLC,

        Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT, BAYVIEW LOAN
SERVICING LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND
INCORPORATED MEMORANDUM OF LAW**

    Pursuant to Local Rule 7.1, Plaintiff, FEDNIE MATHIEU ANDUZE, ("Plaintiff"), by and through the undersigned counsel, hereby responds to Defendant's, BAYVIEW LOAN SERVICING, LLC ("Bayview") Motion to Dismiss Plaintiff's Complaint (hereinafter the "Motion") under Federal Rule 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully requests this Honorable Court enter an Order denying the relief sought by Defendant. In support of her response, Plaintiff submits the incorporated memorandum of law.

    **I. INTRODUCTION AND BACKGROUND**

    Before this Court is yet another example of a loan servicer attempting to avoid liability for its complete disregard of federal regulations by pointing the blame on the borrower. Bayview failed to comply with not one, but two separate requests under Regulation X, 12 C.F.R. § 1024, *et seq*. With respect to the first request, a request for information pursuant to 12 C.F.R. § 1024.36 (hereinafter "Plaintiff's RFI"), Bayview failed to respond at all. *See* Compl. ¶¶ 43, 48-49; [D.E. 1-2]. With respect to the second request, a notice of error pursuant to 12 C.F.R. § 1024.35 (hereinafter "Plaintiff's NOE"), Bayview did no more than confirm Plaintiff's allegations that Bayview failed

to permanently modify Plaintiff's loan despite Plaintiff's having made the requisite trial payments. *See* Compl. ¶¶ 60-63; D.E. 1-6; D.E. 1-7.

In the Motion, Bayview attempts to gain the Court's attention with the artful allegation that Plaintiff attempted to "farm a lawsuit under the federal statutes", rather than seek the information Plaintiff requested through the proper discovery channels. *See* D.E. 10 at 1. However, Bayview fails to point to any supporting law that prohibits borrowers from using the very tools (Regulation X and RESPA) given to them by Congress to seek information from their loan servicers while their loans are in foreclosure. This is because no such prohibition or exception exists. In fact, 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.41 specifically deal with errors and obligations related to active foreclosure proceedings. Not to mention, when Plaintiff's counsel sent the second request [D.E. 1-6] on behalf of Plaintiff to Bayview, the Foreclosure should have already been dismissed and/or inactivated because Plaintiff had complied with all necessary obligations set forth in the Stipulation Agreement (hereinafter the "Agreement") [D.E. 1-1] in order to receive a permanent loan modification and promised. *See* [D.E. 1-7].

Specifically, Bayview attempts to persuade the Court that Plaintiff has failed to adequately plead damages under RESPA because actual damages do not encompass "photocopying costs, postage and attorneys' time to draft the follow up letter [to Bayview]" and because Plaintiff generally alleged Bayview's pattern of noncompliance without supporting factual allegations. *See* [D.E. 10 at 7-9].

However, very recently, in a case involving very similar factual allegations and issues, Senior Judge Kenneth L. Ryskamp of the Southern District of Florida denied the defendant's motion to dismiss. In Almquist v. Nationstar Mortg. LLC, Case No. 14-81178-CIV-RYSKAMP/HOPKINS (S.D. Fla. Dec. 3, 2014), Judge Ryskamp found that the plaintiff

sufficiently pled actual damages, which included photocopying and postage costs, and attorney's fees "incurred as a result of having to send additional correspondences due to [the defendant's] failure to adequately respond to plaintiff's [request for information]." Id. at *4-5. A copy of the order is attached hereto for the Court's convenience. Judge Ryskamp also held that the plaintiff sufficiently pled statutory damages by alleging that the plaintiff could demonstrate other instances of the defendant's noncompliance with RESPA and that the defendant, in that specific case, violated two (2) provisions of RESPA. Id. at *6.

Bayview moves to dismiss Plaintiff's Complaint[1], which arose from Bayview's failure to comply with the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ["RESPA"], and Bayview's breach of the Agreement. In her Complaint, Plaintiff alleges that:

**(1)** Bayview failed to or refused to respond to Plaintiff's RFI in violation of 12 C.F.R. § 1024.36(d)(2)(i)(B) and 12 U.S.C. § 2605(k)(1)(E);

**(2)** Bayview failed to or refused to adequately respond to Plaintiff's NOE in violation of 12 C.F.R. § 1024.35(e)(1) and 12 U.S.C. § 2605(k)(1)(C); and

**(3)** Bayview breached a contractual agreement between Bayview and Plaintiff whereby Bayview agreed to permanently modify Plaintiff's mortgage loan upon compliance of the terms of the Agreement.

In the Motion, Bayview argues that: (1) "Plaintiff's claims under 12 C.F.R § 1024.35 are not ripe;" (2) "Plaintiff fails to sufficiently allege actual damages or a basis for statutory damages under RESPA;" and (3) "Plaintiff's breach of contract claim fails because the modification agreement is unenforceable by Borrower." [D.E. 10 at 5, 7, and 10].

---

[1] Plaintiff has withdrawn Counts III and IV of the Complaint. [D.E. 14]

**II. MEMORANDUM OF LAW**

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court's review is "limited to the four corners of the complaint." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009) (quoting St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002)). Additionally, the Court must view the complaint in the light most favorable to the Plaintiff, and it must generally accept the Plaintiff's well-pleaded facts as true. Hishon v. King v. Spalding, 467 U.S. 69 (1984); Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043 (11th Cir. 2007).

Once a court identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth, the court must next determine whether the well-pled facts state a claim to relief that is "plausible on its face". Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (1955). Plaintiff has "well-pled" the facts that gave rise to her Complaint. The facts supporting each element of the cause of action are pled. Thus, Plaintiff has stated a valid cause of action.

**A. Plaintiff has stated a valid claim under RESPA**

As a threshold matter, RESPA—as a remedial, consumer-protection statute—must be "construed liberally in order to best serve Congress' intent." McLean v. GMAC Mortg. Corp., 398 F.App'x. 467, 471 (11th Cir. 2010)(*Citing* Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 707 (11th Cir. 1998). The Consumer Financial Protection Bureau ("CFPB"), the federal agency responsible for issuing and enforcing Regulation X, which implements RESPA, has recognized the severe disadvantage consumers face when dealing with mortgage servicers.

> Given the nature of their activities, servicers can have a direct and profound impact on borrowers […] Servicers are generally not subject to the market discipline from consumers because consumers have little opportunity to switch servicers. Rather, servicers compete to obtain business from the owners of loans […] and thus competitive pressures tend to drive servicers to lower the price of servicing and scale their investment in providing service to consumers accordingly. Servicers also earn revenue from fees assessed on borrowers […] As a result, servicers have an incentive to look for opportunities to impose fees on borrowers to enhance revenues. These attributes of the servicing market created

4

> problems for certain borrowers even prior to the financial crisis.
>
> \*\*\*
>
> Consumer harm has manifested in many different areas, and major servicers have entered into significant settlement agreements with Federal and State governmental authorities.
>
> \*\*\*
>
> [I]nvestigations of servicers have found […] servicers who have misled, or failed to communicate with, borrowers, lost or mishandled borrower-provided documents supporting loan modification requests, and generally provided inadequate service to delinquent borrowers […] [S]ervicers may be acting to maximize their self-interests in the handling of delinquent borrowers.

*78 Fed. Reg. 10696, 10699-10700 (Feb. 14, 2013).*

Congress originally enacted RESPA based in part on abusive servicing practices. *Id.* at 10702. It is evident that servicers have the leverage in an industry rampant with fraud, improper fee impositions, and unlawful foreclosure practices. At the end of the day, consumers had little recourse until RESPA and its implementing regulations went into effect. Now that there are protections in place for consumers, a means for consumers to obtain meaningful information, and mortgage servicers are now required to maintain certain policies and procedures, consumers finally have a voice.

RESPA provides an avenue for consumers to go directly to their mortgage servicers to obtain information about their loan and Section 2605(e) is privately actionable through RESPA's civil liability section—Section 2605(f). When a consumer sends a "request for information" to their mortgage servicer, regardless of the specific inquiry, it is likely that there will be minimal actual damages. If a consumer sends a request for information to determine who owns their loan, what could the actual damages possibly be? This is why RESPA has specifically provided for statutory damages. RESPA was intended to protect consumers, not inhibit their ability to enforce

5

the provisions of the statute, which are specifically carved out for private enforcement.

If the courts do not construe RESPA liberally and in favor of consumers, its purpose would be diminished. Servicers can easily avoid the requirements of RESPA, as Bayview did here, knowing that any individual claim against them will fail as a matter of law. The CFPB, as a regulatory agency, has the task to ensure compliance of these regulations; but, if a consumer is unable to privately enforce these regulations, then the civil liability section of RESPA is meaningless.

### (1) Plaintiff's claim under 12 C.F.R. § 1024.35 is ripe for review.

Bayview first argues that Plaintiff's claim under Section 1024.35 is not ripe because Plaintiff filed the instant action within the thirty (30) business days within which Bayview had to respond to Plaintiff's NOE. Section 1024.35(e) titled *Response to notice of error* states in relevant part:

> (1) *Investigation and response requirements. (i) In general.* Except as provided in paragraphs (f) and (g) of this section, a servicer must **respond** to a notice of error by either:
>
> (A) Correcting the error or errors identified by the borrower and providing the borrower with a **written notification** of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a **written notification** that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance. (emphasis added).

The timeframe within which a servicer has to "investigate" and "respond", as applicable here, is "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer received the applicable notice of error." 12 C.F.R. § 1024.25(e)(3)(i)(C).

Bayview received Plaintiff's NOE on September 19, 2014. As such, Bayview had until

November 3, 2014 (thirty business days) within which to "conduct an investigation" and "respond" to Plaintiff's NOE by sending Plaintiff a "written notification" in compliance with 12 C.F.R. § 1024.35(e)(1). "On October 22, 2014, BAYVIEW responded to Plaintiff's NOE (hereinafter the "Response")." Compl. ¶ 59. The second paragraph of D.E. 1-7, Bayview's "written notification", states that "After reviewing the account, our records indicate…" *See* [D.E. 1-7]. It is evident that this language was intended to mean that an investigation had occurred, and that D.E. 1-7 was the "response" after conducting said investigation. Plaintiff alleged in her Complaint that "BAYVIEW neither corrected the error nor stated that no error had occurred, in violation of 12 C.F.R. § 1024.35(e)(1)(i)." Compl. ¶ 63. In other words, Bayview failed to send a "written notification" that complied with Section 1024.35(e)(1)(i). Bayview argues that *even though* it sent a "written notification" to Plaintiff's NOE on October 22, 2014, which Bayview does not argue was not compliant with Section 1024.35(e)(1)(i), Plaintiff's filing of this lawsuit prior to November 3, 2014, is premature and hence not ripe. This argument should be stricken.

Plaintiff's claim became ripe the day it received Bayview's "written notification" [D.E. 1-7] that was non-compliant with Section 1024.35(e)(1)(i). By Bayview's own admission [D.E. 1-7] the investigation and response had been completed by October 22, 2014, the day it sent D.E. 1-7 to Plaintiff's counsel. Bayview argues that Plaintiff did not provide Bayview the requisite time to comply with Regulation X, essentially because Bayview had a few additional days to "take correction action". *See* [D.E. 10 at 6]. This is false. Bayview violated the statute in D.E. 1-7. Plaintiff did not allege that Bayview failed to comply with Section 1024.35(e)(3)(i)(C); i.e. Plaintiff is not alleging that Bayview did not respond within the required timeframe. Had Bayview *not* provided a "written notification" by October 31, 2014, the date this action was filed, then Plaintiff would concede her action was not ripe because Bayview had until November 3, 2014, to

7

"conduct an investigation" and provide a "written notification". Rather, Plaintiff alleges that "BAYVIEW has failed to comply with 12 C.F.R. § 1024.35(e)(1)(i) in that BAYVIEW *did not provide a proper response* to a notice of error asserted under 12 C.F.R. § 1024.35(b)." Compl. ¶ 71 (emphasis added).

Moreover, had Bayview subsequently "taken corrective action" after the filing of the instant action and permanently modified Plaintiff's loan, Bayview may have a stronger argument. However, to date, Bayview has not provided Plaintiff with an executed permanent loan modification agreement. Therefore, Plaintiff respectfully asks this Court to find that the issues raised in the Complaint are ripe for review.

### (2) Plaintiff sufficiently alleged that she has suffered actual damages as a result of Bayview's RESPA violations

Bayview argues that Plaintiff cannot maintain a RESPA claim for actual damages because Plaintiff did not establish an "economic injury [that] was proximately caused by the Bank's violation of RESPA." [D.E. 10 at 7].

Contrary, Plaintiff's alleged damages in her Complaint **are** a direct result of Bayview's violation of RESPA. The actual damages alleged in Plaintiff's Complaint are for "photocopying costs and postage costs ***incurred as a result of having to send additional correspondences*** due to BAYVIEW's failure to comply with RESPA." Compl. ¶ 74 (emphasis added). Those "additional costs" would not have been incurred *but for* Defendant's failure to provide the information requested in Plaintiff's RFI. There is a direct causal link between the violation and the damages.

Bayview is unable to pinpoint any courts in the Southern District that held that costs incurred as a result of a RESPA violation are insufficient to plead actual damages. Conversely, as mentioned earlier, in Almquist, Judge Ryskamp specifically found that the "complaint states a claim for actual damages in that it seeks damages for photocopying and postage costs." Almquist,

8

Case No. 14-81178-CIV-RYSKAMP/HOPKINS at *4.

Moreover, "actual damages" are not defined anywhere in RESPA. "Although we have not specifically defined 'actual damages' within the meaning of § 2605(f)(1)(A), we have held that RESPA is a consumer protection statute." McLean v. GMAC Mortg. Corp., 398 F.App'x. 467, 471 (11th Cir. 2010). That being said, "actual damages" should be construed broadly.

> Courts have interpreted the term "actual damages" to include pecuniary damages such as: (1) out-of-pocket expenses incurred dealing with the RESPA violation **including expenses for preparing, photocopying and obtaining certified copies of correspondence**, (2) lost time and inconvenience, such as time spent away from employment while preparing correspondence to the loan servicer, to the extent it resulted in actual pecuniary loss (3) late fees and (4) denial of credit or denial of access to full amount of credit line.

McLean v. GMAC Mortg. Corp., 595 F.Supp.2d 1360, 1366 (S.D. Fla 2009)(internal citations omitted)(emphasis added); *see also* Almquist, Case No. 14-81178-CIV-RYSKAMP/HOPKINS at *4; Bryan v. Fed. Nat'l Mortg. Ass'n, 2014 WL 2988097 (M.D. Fla. 2014)(the court finding the plaintiffs sufficiently alleged damages in the form of emotional distress, anxiety, embarrassment); Jackson v. HSBC Mortg. Services, Inc., 2014 WL 5100089 (N.D. Ala. 2014)(the court finding that the plaintiff sufficiently pled actual damages for costs and expenses incurred as a result of the defendant's conduct). In Pendleton v. Wells Fargo Bank, N.A., 993 F.Supp.2d 1150, 1153 (C.D. Cal. 2013), the court stated:

> With respect to damages, [p]laintiff alleges:
>
> > **As a direct and proximate result of Wells Fargo's conduct**, [p]laintiff has suffered actual pecuniary damages that include, but are not limited to, the over calculation and overpayment of interest on [p]laintiff's Loan, the costs of repairing [p]laintiff's credit, the reduction and/or elimination of [p]laintiff's credit limits, and attorney's fees and **costs**, in an amount to be proven at trial.
>
> (Compl. ¶ 18.)
>
> This sufficiently alleges actual damages and distinguishes the instant matter from the cases in which courts ruled that actual damages were not sufficiently alleged. (emphasis added).

With respect to Marais v. Chase Home Finance, LLC, 736 F.3d 711 (6th Cir. 2013), Plaintiff concedes that the parenthetical used in the Complaint was an inaccurate account of the court's holding. Plaintiff's parenthetical was merely what the court *suggested* the district court consider on remand. Marais, 736 F.3d at 721. On remand, the district court took into account the circuit court's consideration and found that:

> The [c]ourt construes **actual damages as encompassing all provable injuries that are the result of Chase' response to receiving the QWR**. Or, to put a finer point on it, all **expenses, costs, fees**, and injuries fairly attributable to Chase's failure to respond appropriately to the QWR, *even if* incurred before the failure to respond, are included.

Marais v. Chase Home Finance, LLC, 24 F.Supp.3d 712, 728 (S.D. Ohio 2014)(emphasis added).

To survive a motion to dismiss, Plaintiff is required to make enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements. Bell Atlantic Corp., 550 U.S., at 556. "We made it clear, on the contrary, that a court must take the allegations as true, no matter how skeptical the court may be." Ashcroft v. Iqbal, 556 U.S. 662, 696 (2009); *See also*, Bell Atlantic Corp., 550 U.S., at 555. The "court must view the complaint in the light most favorable to the plaintiff." Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1056 (11th Cir. 2007).  Plaintiff has alleged the actual damages incurred and the casual link between the damages and the violation. As such, Plaintiff has sufficiently alleged her entitlement to actual damages under RESPA.

### (3) Plaintiff has sufficiently alleged that she is entitled to statutory damages under RESPA

Next, Defendant argues that Plaintiff failed to allege facts to support that Defendant has engaged in the pattern or practice of noncompliance with RESPA. [D.E. 10 at 9]. This is simply not true. Plaintiff specifically stated she was entitled to statutory damages as a result of Bayview's pattern or practice of noncompliance with Regulation X and RESPA in that, "In this case alone,

BAYVIEW has violated multiple provisions of Regulation X and RESPA." Compl. ¶ 75. Plaintiff alleged four (4) separate violations of Regulation X and RESPA. *See* Compl. ¶¶ 71-72.

In Almquist, Judge Ryskamp held that the plaintiff had sufficiently alleged facts to support that the defendant had engaged in a pattern of practice of noncompliance where the defendant violated two (2) provisions of RESPA. Almquist, Case No. 14-81178-CIV-RYSKAMP/HOPKINS at *6. Here, Plaintiff alleged Bayview violated four (4) provisions. "[T]here is no magic number of violations that create a 'pattern or practice of noncompliance,'" Id. (*citing* Kapsis v. Am. Home Mortg. Servicing, Inc., 923 F.Supp.2d 430, 445 (E.D.N.Y. 2013). "[P]laintiff has alleged more than two violations of RESPA by AHMSI and, as such, he has stated a plausible claim for statutory damages under RESPA." Kapsis, 923 F.Supp.2d at 449.

As such, Plaintiff respectfully asks this Court, in viewing the facts alleged in Complaint in the light most favorable to Plaintiff, that Plaintiff has sufficiently plead Bayview's pattern or practice of noncompliance of RESPA so as to survive this Motion.

### B. The Modification Agreement is an Enforceable Contract by Plaintiff

Next, Bayview argues that Plaintiff's breach of contract claim fails because she cannot enforce the Loan Adjustment Agreement due to the fact that Plaintiff had a pre-existing duty to make her mortgage payments. *See* [D.E. 10 at 10]. "The performance of a pre-existing duty does not amount to the consideration necessary to support a contract." [Id.] *quoting Allegheny Cas. Co. v. Archer-Western/Demaria Joint Venture III,* 2014 WL 4162787, at *12 (M.D. Fla. 2014).

Plaintiff does not dispute the holding in Allegheny, however, said case was about a construction contract and not a mortgage contract. Second, Bayview neglected to mention a case directly on point, where *Bayview's counsel also represented the defendant*. In Pena v. American Home Mortg. Servicing, Inc., 2012 WL 2368873 (M.D. Fla. 2012), the plaintiff brought a breach

11

of contract claim for the defendant's alleged breach of a loan modification agreement. The defendant argued that the agreement "is merely an unenforceable [trial period plan] agreement." Id. at *2. The court, finding otherwise, stated that "the [a]greement provides that it will take effect, and the 'Loan Documents will automatically become modified […] so long as […] the preconditions set forth […] have been satisfied.'" Id. "It is enough to allege, as [p]laintiff has, that the [a]greement was a valid enforceable contract." Id.

Similarly, the Agreement required Plaintiff to meet certain preconditions after which her loan was supposed be permanently modified according to the Loan Adjustment Agreement: "If Borrower successfully completes all the terms of said Stipulation, Servicer **will** execute this Agreement and **adjust** the Loan accordingly." [D.E. 1-3 at 5](emphasis added). As such, Plaintiff respectfully asks this court to align its holding with that of Pena and hold that the Agreement is enforceable.

The case to which Bayview cites to support its position of the pre-existing duty rule, McGowan v. Homeward Residential, Inc., 500 Fed.Appx. 882 (11th Cir. 2012) is inapposite to the present case. In Homeward, the plaintiff brought, *inter alia*, a breach of contract claim for the defendant's breach of a forbearance agreement; specifically, the defendant initiated a foreclosure proceeding **after** the conclusion of the forbearance period despite the promise in the forbearance agreement to "forbear from continuing with foreclosure proceedings" and would "consider a modification of [the] loan." Id. at 884. The court held "the first part of that promise does not make sense since because there were then no pending foreclosure proceedings 'to forbear from continuing'. And a promise to consider doing something is illusory." Id. at 885. Additionally, the plaintiff brought the action **after** the forbearance period had concluded; thus, there was no contract. Presently, the Plaintiff complied with all of the terms of the Agreement, and Bayview failed to

permanently modify her loan as *Bayview specifically promised and stated* in the Loan Adjustment Agreement.

To further dispel the pre-existing duty rule, the court should consider the elements of a valid contract Florida: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." Vega v. T–Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009).

> The essential elements of a valid contract are an **offer, an acceptance, and consideration**. *Vadnais v. NSK Steering Sys. Am., Inc.*, 675 F.Supp.2d 205, 207 (D.Mass.2009). Courts have consistently found that **[Trial Period Plans] have all the required elements of binding contracts**. *See Belyea v. Litton Loan Servicing, LLP*, 2011 WL 2884964, *7–8 (D.Mass.2011) (finding all elements of a contract could be established with the TPP); *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation*, 2011 WL 2637222, *3–4 (D.Mass.2011) (finding borrowers requirements under the TPP constitute consideration); *Bosque v. Wells Fargo Bank, N.A.*, 762 F.Supp.2d 342, 351–52 (D.Mass.2011) (finding the TPP has all the elements of a valid contract, noting "it is plain that the TPPs were offers, and that [P]laintiffs' signatures and subsequent monthly payments under the terms of the TPP constituted acceptance of those offers.")

Conte v. Bank of America, N.A., 2014 WL 5151008 (D.Mass 2014)(emphasis added). The factual allegations in Conte are very similar to the present case. In Conte, the plaintiffs brought, *inter alia*, a breach of contract claim against their loan servicer for failure to permanently modify their loan after completion of a Trial Period Plan ("TPP"). Id. The court found the TPP had all the elements of a valid contract:

> [I]t is clear from the TPP itself that sending a copy of the proposed **TPP constituted an offer**; the very word offer is used to describe the proffered agreement. The **TPP offered a permanent loan modification in exchange for** the borrower providing financial information, **making three modified payments**, and obtain credit counseling if the lender required. Here, **Plaintiffs accepted the offer by signing and returning it and complying with its requirements. The allegations here show an offer, acceptance, and consideration existed in this case.** Id. (emphasis added).

Presently, the Agreement should be construed to be a Trial Period Plan ("TPP"). Plaintiff accepted the TPP (the offer), made a down payment, six (6) trial payments, signed the Agreement, and executed the Modification Adjustment Agreement. *See* [D.E. 1-3 at 1]; *see also* [D.E. 1-7].

13

Based on the above, Plaintiff respectfully asks this Court to find that the pre-existing duty rule should not apply because the Agreement was an enforceable contract, and that Bayview's failure to permanently modify Plaintiff's loan as promised in D.E. 1-3, was a breach of said contract.

## CONCLUSION

For the reasons discussed above, Plaintiff, FEDNIE MATHIEU ANDUZE, respectfully requests that this Honorable Court deny Defendant's, BAYVIEW LOAN SERVICING, LLC, Motion to Dismiss Plaintiff's Complaint, order Defendant to file an Answer to Plaintiff's Complaint, and grant such other relief as is just and proper.

>Respectfully submitted,
>
>LOAN LAWYERS, LLC
>*Attorneys for Plaintiff*
>
>By:   /s/ Aaron Silvers
>      AARON SILVERS, ESQ.
>      Florida Bar No: 104811
>      E-Mail: asilvers@floridaloanlawyers.com
>      YECHEZKEL RODAL, ESQ.
>      Florida Bar No.: 091210
>      E-Mail: chezky@floridaloanlawyers.com

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on January 7, 2015 with the Clerk of Court using CM/ECF along with having served all counsel of record or pro se parties identified on the service list incorporated herein in the manner specified, either via transmission of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notice of Electronic Filing.

Albert D. Gibson, Esq.
Blank Rome, LLP
500 East Broward Blvd
Suite 2100
Fort Lauderdale, FL 33394
Counsel for Defendant BAYVIEW
Service by CM/ECF

         LOAN LAWYERS, LLC
         *Attorneys for Plaintiff*
         2150 S. Andrews Ave., 2nd Floor
         Fort Lauderdale, FL 33316
         Telephone: (954) 523-4357
         Facsimile: (954) 581-2786

         /s/ Aaron Silvers
         Aaron Silvers, Esq.
         Florida Bar No.: 104811
         E-Mail: asilvers@floridaloanlawyers.com